```
                    IN THE UNITED STATES DISTRICT COURT

                         FOR THE DISTRICT OF OREGON

                              PORTLAND DIVISION



CASEY SCHULTZ,                              08-CV-1095-BR

        Plaintiff,
                                            FINDINGS OF FACT,
v.                                          CONCLUSIONS OF LAW, AND
                                            VERDICT
A & C TRUCKING I, LLC, a
Washington limited liability
company, and ALAN R. HENNING,

        Defendants.


CASEY SCHULTZ
2320 E. Baseline Road
Suite 148-161
Phoenix, AZ 84042-6951

        Plaintiff, Pro Se

TYSON L. CALVERT
Lindsay Hart Neil & Weigler LLP
1300 SW Fifth Avenue, Suite 3400
Portland, OR 97201
(503) 226-7677

        Attorneys for Defendants


1  -  FINDINGS OF FACT, CONCLUSIONS OF LAW, AND VERDICT
```

**BROWN, Judge.**

This action arises under 49 U.S.C. § 14102 and its implementing regulations at 49 C.F.R. part 376. The matter was tried to the Court on March 9-10, 2011.

### VERDICT

The Court has weighed, evaluated, and considered the evidence presented at trial and has completed its deliberations. Based on its Findings of Fact and Conclusions of Law made herein pursuant to Federal Rule of Civil Procedure 52(a), the Court finds in favor of Plaintiff and against Defendant A & C Trucking I, LLC, in the amount of **$1,186.50** for breach-of-lease damages together with post-judgment interest in accordance with 28 U.S.C. § 1961. The Court also awards Plaintiff his recoverable prevailing-party costs against A & C in an amount to be determined after Plaintiff files a Bill of Costs as described below. Finally, if the parties do not resolve the issue, the Court will consider a petition for attorneys' fees by Plaintiff against Defendant A & C in the manner described below. As to Plaintiff's claim against Defendant Alan R. Henning personally, the Court finds in Henning's favor. If Henning contends he may be entitled to recover prevailing-party costs, the Court will consider a Bill of Costs from Henning as described below.

## BACKGROUND

With the benefit of counsel, Plaintiff Casey Schultz filed this action on September 19, 2008, against Defendant A & C Trucking I, LLC, and its owner, Defendant Alan R. Henning, alleging breach of a Lease Agreement and seeking money damages against both Defendants for amounts allegedly due under the Lease Agreement together with interest, costs, and attorneys' fees. Early in the case, however, Plaintiff's counsel withdrew, and Plaintiff has proceeded *pro se* since then.

According to Plaintiff, Defendants entered into a written Lease Agreement with Plaintiff that Defendants signed on April 8, 2008, and Plaintiff signed on May 2, 2008. The Lease Agreement specifically stated it was retroactive to January 21, 2008. Plaintiff contends he leased a commercial truck and trailer to Defendants and provided commercial truck-driving services to Defendants pursuant to the terms of the Lease Agreement. Plaintiff asserts he was to be compensated under the Lease Agreement within 15 days of his submission of certain documents that Defendants required "to secure payment from [Defendants'] customers." According to Plaintiff, he was to receive 90% of the invoiced amount for each load plus an additional 2% after Defendants were paid in full. Among other things, Plaintiff contends Defendants breached the Lease Agreement in July and August 2008 by withholding payments that Plaintiff asserts were

3 -   FINDINGS OF FACT, CONCLUSIONS OF LAW, AND VERDICT

then due and owing. Plaintiff also alleges he then discovered Defendants made deductions on each invoice for "Quick Pay" and "factoring" charges that were not authorized in the Lease Agreement. In all, Plaintiff seeks $9,079.64 damages as follows:

(1) 2% of the total invoice amounts ($1,186.50);

(2) unauthorized "Quick Pay" charges ($630.00);

(3) unpaid invoices from July and August 2008 ($5,323.00);

(4) "illegal" factoring charges ($235.75); and

(5) a 2.5% Factor Fee ($1,704.39).

Plaintiff also seeks damages for lost wages during the pendency of this matter ($5,000) and an award of attorneys' fees ($9,000) and interest.

Finally, Plaintiff contends Defendant Henning is personally liable together with A & C Trucking for the amounts allegedly due under the Lease Agreement.

Defendants, who are represented by counsel, deny the alleged Lease Agreement represents a binding contract between the parties because the parties did not have a mutual intent to form a binding agreement; deny Plaintiff is owed any money on any basis; and deny Defendant Henning is personally liable for any obligations of A & C Trucking. Defendants maintain there was merely an oral understanding between the parties under which, in exchange for a percentage of the shipping charges, Defendant would provide certain administrative services to Plaintiff, such

4 -   FINDINGS OF FACT, CONCLUSIONS OF LAW, AND VERDICT

as finding loads for Plaintiff to transport, managing funds to cover Plaintiff's fuel charges while on the road, and enrolling Plaintiff in a drug-monitoring consortium.  Moreover, Defendants assert Plaintiff agreed to pay a $30 "Quick Pay" charge for same-day transfers of funds to his account.  Finally, Defendants contend the disputed factoring charges resulted from Plaintiff's voluntary involvement with a factoring company.

The parties agreed to try the matter to the Court.  In the course of the two-day trial, there were three witnesses: Plaintiff; Defendant Alan Henning; and Henning's son, Cory Henning.

The Court weighed and evaluated their testimony in the same manner it would instruct a jury to do.  In addition, although the parties introduced in evidence more than 100 exhibits, including numerous invoices, receipts, and other records of the financial transactions between the parties, they did not provide the Court with any comprehensive accounting that conclusively reconciles the disputed credit-and-debit issues between them.  Thus, in considering the testimony and documentary evidence as a whole, it was left to the Court to determine who and what to believe and, in that process, to decide whether Plaintiff proved his breach-of-lease claim and other contentions by a preponderance of the evidence.

5  -  FINDINGS OF FACT, CONCLUSIONS OF LAW, AND VERDICT

## **FINDINGS OF FACT**

Pursuant to Federal Rule of Civil Procedure 52(a), the Court finds the following facts by a preponderance of the evidence:

**A.  Findings as to formation of a binding lease agreement:**

1. Plaintiff was in his 50s when he decided to explore a career as a commercial truck driver.  In early 2007 Plaintiff met Elzie McIntire, a "leased-on" driver with A & C Trucking, and began to travel with him to gain truck-driving experience.

2. Also in 2007, Plaintiff's business associate, Li Zhang, organized in Arizona a limited-liability company, CAL LTL Express, LLC.  Zhang named Plaintiff as President and CEO of CAL LTL Express.  After they acquired a Volvo tractor and a Hyundai trailer, the United States Department of Transportation issued a Motor Carrier Authority, No. 0968990, in November 2007 to Zhang, "d/b/a CAL LTL Express."  On December 6, 2007, Plaintiff enrolled in "United Truck and Car Driving School" to facilitate obtaining a commercial driver's license.  On January 4, 2008, Plaintiff obtained from the State of California an Interim Commercial Driver License (CDL).

3. After obtaining his CDL, Plaintiff contacted Alan Henning, and they discussed the possibility of

        Plaintiff "leasing on" in order to drive under A & C's motor-carrier authority.  Although the parties dispute much about these and later discussions between Plaintiff and Henning, the Court finds Plaintiff, as a result of these talks, sent Henning an employment application and drug-screening records in mid-January 2008.  In addition, Henning arranged for Plaintiff to be included in a drug-screening consortium.

4. Plaintiff and Henning also discussed financial terms: The parties agreed Plaintiff was to receive 90% of the invoiced amount for each load he transported plus an additional 2% after A & C was paid in full.

5. Following these discussions and between January 21, 2008, and August 2008, Plaintiff picked up and delivered more than 40 loads as arranged by A & C.  Although Plaintiff contends he carried these loads under A & C's motor-carrier authority, Defendants argue Plaintiff always drove under the authority of CAL LTL Express.  The Court finds the parties did not reduce to writing the terms of their venture during the early months of their relationship.  Nonetheless, A & C arranged loads for Plaintiff to transport, advanced fuel costs to Plaintiff while he was underway, and paid a percentage of the invoice to Plaintiff on delivery.

7 -   FINDINGS OF FACT, CONCLUSIONS OF LAW, AND VERDICT

    In addition, there was a factoring agent, Phoenix Capital Group (PCG), with whom the parties also dealt on each of Plaintiff's invoices.  PCG advanced to A & C some percentage of the invoice amount which, in turn, A & C advanced in part to Plaintiff for fuel costs.  The evidence is unclear as to how the arrangement with PCG originated, but the Court is satisfied Plaintiff was aware of and agreed to the factoring charges from the beginning.  In addition, Plaintiff obviously benefited from the ability to obtain advances from PCG via A & C.

6. In March 2008 Plaintiff encountered a problem with a shipper in Pennsylvania who refused to allow Plaintiff to take on a load because Plaintiff could not produce a written lease agreement under A & C's authority.  Plaintiff called Alan Henning, who was able to persuade the shipper to allow Plaintiff to proceed.  This event, however, led Plaintiff and Henning to discuss the need for a written agreement.

7. On April 8, 2008, Alan Henning executed on behalf of A & C as the "carrier's authorized representative" a "Model Lease Agreement (49 C.F.R. Part 376)," which Henning faxed to Plaintiff on the same day.  The Lease Agreement was in a pre-printed form with blanks

8 -  FINDINGS OF FACT, CONCLUSIONS OF LAW, AND VERDICT

completed in Henning's writing, including the effective date of January 21, 2008.  With the transmission to Plaintiff, Henning included instructions to Plaintiff to initial various parts of the Lease Agreement, to provide vehicle identification numbers for the Volvo and Hyundai vehicles Plaintiff was driving, and to "make sure to put Jan 21 as we have - not today's date."  Plaintiff took some time to study the terms of the Lease Agreement.  In particular, Plaintiff noted Paragraph 13 (providing for payment within 15 days of document-submission) and Appendix B (providing for payment at 90% of the invoice amount plus 2% after a shipment was fully paid).  Finding the terms acceptable, Plaintiff signed the Lease Agreement and dated his signature as Henning instructed.  Plaintiff then faxed the fully executed Lease Agreement back to Henning on May 2, 2008.

8. Although Defendants insist they did not intend to form a binding lease agreement with Plaintiff when Henning transmitted the executed lease to Plaintiff, the Court notes the record is completely devoid of any evidence that Defendants communicated any contrary intention at the time.  Moreover, the Court finds illogical, and thus unpersuasive, Henning's present explanation that

9 -   FINDINGS OF FACT, CONCLUSIONS OF LAW, AND VERDICT

        he sent the fully-executed contract merely for Plaintiff to review, especially when Henning included explicit instructions as to how and where Plaintiff was to initial, sign, and back-date the Lease Agreement. Accordingly, the Court finds Plaintiff and A & C Trucking manifested their mutual assent as to the terms of the written Lease Agreement in May 2008.

**B. Findings as to Plaintiff's specific claims of breach of the Lease Agreement:**

1. Under the terms of the retroactive Lease Agreement, Plaintiff was entitled to receive from Defendant A & C 2% of each invoice after it was fully paid. Although Defendant's evidence shows Plaintiff received that 2% consideration in January 2008 on Invoices 101-103, Defendants concede it was not paid for the remaining invoices. Plaintiff asserts the amount owing for this breach is $1,186.50. The Court is satisfied the financial records in evidence support this "2%" element of Plaintiff's claim in at least the amount Plaintiff claims ($1,186.50).

2. Plaintiff asserts there were 21 "quick pay" deductions at $30 each that were not authorized in the Lease Agreement, and, therefore, Plaintiff contends he is entitled to recover $630.00 for this alleged breach. The Court finds Cory Henning's testimony that Plaintiff

10 -   FINDINGS OF FACT, CONCLUSIONS OF LAW, AND VERDICT

       approved each of the "quick pay" deductions is credible; Plaintiff wanted to have faster access to funds deposited by A & C; and Plaintiff, in fact, authorized the "quick pay" deductions.  In any event, the Court notes those authorizations appear to be consistent with Paragraph 19 of the Lease Agreement rather than a breach.

3. According to Plaintiff, he was not paid the full 90% value on Invoice Numbers 706, 707, and 801-806, and he alleges he is owed $5,323.00.  Plaintiff's "proof" of this claim, however, is merely conclusory and based on arithmetical calculations that assume but do not prove any actual loss.  Moreover, the Court does not find any corroborating documentary evidence to support Plaintiff's claim.  Having carefully reviewed all of the financial records, the Court is not able to determine whether Plaintiff sustained any loss of this nature.  Moreover, it appears that at least $2,135.95 of this alleged loss was actually paid by A & C on November 14, 2008, to Plaintiff's former attorney at Plaintiff's direction.

4. With respect to Plaintiff's claim that various factoring charges were deducted without authorization from Plaintiff's contract compensation, the Court finds

11 -   FINDINGS OF FACT, CONCLUSIONS OF LAW, AND VERDICT

        Plaintiff, in fact, authorized the factoring charges and, in any event, those authorizations also appear to be consistent with Paragraph 19 of the Lease Agreement rather than a breach.

5. With respect to Plaintiff's claim that he incurred $5,000 in lost wages and other consequential damages as a result of Defendants' alleged breach of the Lease Agreement, the Court notes Plaintiff did not offer any evidence to support that claim.

C. **Findings of Fact as to Plaintiff's claim against Alan Henning personally:**

1. The Court finds persuasive Alan Henning's testimony (corroborated by the documentary evidence) that he made considerable efforts to act on behalf of A & C Trucking only in his official capacity as owner and to observe all formalities related to A & C's status as an LLC. Plaintiff's evidence that A & C Trucking operates out of Henning's home and uses Henning's personal telephone and fax numbers is not sufficient to persuade the Court that Henning is personally liable for A & C Trucking's breach of the Lease Agreement.

## CONCLUSIONS OF LAW

Based on the foregoing Findings of Fact, the Court makes the following Conclusions of Law pursuant to Rule 52(a)(1):

12 -   FINDINGS OF FACT, CONCLUSIONS OF LAW, AND VERDICT

1.  Plaintiff and Defendant A & C formed a written contract on May 2, 2008, made retroactive by the parties to January 21, 2008.  *See State v. Heisser*, No. CC 200522450, 2011 WL 814959, at *8 (Or. Mar. 10, 2011).  The contract was formed expressly pursuant to 49 U.S.C. § 14102 and its implementing regulations at 49 C.F.R. part 376 under which A & C leased from Plaintiff his Volvo tractor and Hyundai trailer.  Pursuant to the terms of the Lease Agreement, A & C would find loads for Plaintiff to haul for which Plaintiff would receive compensation of 90% of the invoice amount for the load plus an additional 2% of the invoice amount when A & C was paid in full.

2.  Defendant A & C breached the Lease Agreement only with respect to its failure to pay Plaintiff the additional 2% when A & C was paid in full on invoices 104 through 806, for which Plaintiff proved damages at trial in the amount of $1,186.50.

3.  Under 49 U.S.C. § 14704, Plaintiff is entitled to seek an award of attorneys' fees and costs as a prevailing party in this matter.

4.  Plaintiff did not meet his burden of proof to show that Defendant Henning acted in such a manner that permits the Court to ignore the corporate form of Defendant

13 -   FINDINGS OF FACT, CONCLUSIONS OF LAW, AND VERDICT

A & C and to impose on Henning personal liability for the actions of A & C.  *See Neidig v. Superior Nat'l Ins. Co.*, 343 Or. 434, 453-65 (2007).

## CONCLUSION

For these reasons, the Court enters its **Verdict** as follows:

1. In favor of Plaintiff and against Defendant A & C Trucking I, LLC, as to Plaintiff's First Claim for Breach of Contract in the amount of $1,186.50 plus statutory interest from the date of entry of Judgment at the rate of .23%, and

2. In favor of Defendant Alan R. Henning and against Plaintiff as to Plaintiff's Second Claim for the personal liability of Defendant Henning.

Plaintiff is entitled to recover his prevailing-party costs against Defendant A & C as to his First Claim and to seek an award of attorneys' fees pursuant to 49 U.S.C. § 14704.  To the extent that Defendant Henning contends he is entitled to prevailing-party costs against Plaintiff, the Court will consider such a claim in due course.  First, however, the Court directs Plaintiff and Defendants' counsel to confer promptly for the purpose of resolving the remaining issues of costs and attorneys' fees.  In light of the amounts involved, the Court notes the obvious point that the time and resources needed to litigate

these issues to conclusion will far exceed the amounts of any actual awards, and, therefore, the Court urges the parties to reach agreement as to these remaining issues in order to conclude this dispute once and for all.

Accordingly, the Court **directs** the parties to file a **JOINT Status Report no later than April 8, 2011**, advising the Court whether they have resolved these issues and, if so, the terms on which a judgment or dismissal order may enter as of that date. If the parties have not resolved the issues by then, the Court will enter a Judgment on its Verdict and start the clock for the filing of cost bills and any petition for attorneys' fees pursuant to Federal Rule of Civil Procedure 54 and Local Rule 54.

IT IS SO ORDERED.

DATED this 23rd day of March, 2011.

/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge